IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SCOTT KYLE PETTY,

      Petitioner,

v.                                      CASE NO. 1:09-cv-171-MMP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  The Respondent filed a response and an appendix with relevant portions of the state-court record, and Petitioner filed a reply. Docs. 12, 16.  Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## Summary of State-Court Proceedings

      An Alachua County jury convicted Petitioner of aggravated stalking, false imprisonment, criminal mischief, and tampering with a witness; he was sentenced to consecutive five-year terms on each count.   The State's trial evidence included the testimony of the victim, Jacqueline Veigh, as well as audiotapes of  voicemail messages and jail conversations recorded while Petitioner was in pretrial detention, and more than 50 letters that he sent to the victim.   The First DCA affirmed *per curiam* without opinion.

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

*Petty v. State,* 965 So 2d 128 (Fla. 1st DCA 9/26/07).  Petitioner sought relief pursuant to

Fla. R. Crim. P. 3.850; the postconviction court summarily denied relief and the First

DCA affirmed *per curiam* without opinion.  App. Exh. N at 65-72; *Petty v. State*, 3 So. 3d

322 (Fla. 1st DCA 2/12/09).  Petitioner filed a habeas corpus petition alleging ineffective

assistance of appellate counsel; the First DCA denied the petition *per curiam* without

opinion.  *Petty v. State*, 10 So. 3d 1178 (Fla. 1st DCA 6/2/09).

　　　　The instant Petition followed.  Respondent concedes that the Petition is timely.

Petitioner enumerates 10 claims for relief, most of which involve allegations of ineffective

assistance of counsel.  Doc. 1.  Respondent contends that some of Petitioner's claims

are unexhausted and procedurally defaulted.  Doc. 16.  Such procedural arguments will

be addressed in turn as to each claim.

### Section 2254 Exhaustion Requirement

　　　　Before bringing a habeas action in federal court, a petitioner must exhaust all

state court remedies that are available for challenging his conviction, either on direct

appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion

requires that prisoners give the state courts a "full and fair opportunity" to resolve all

federal constitutional claims by "invoking one complete round of the State's established

appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful opportunity to

"pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v.

Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

　　　　When a petitioner fails to properly exhaust a federal claim in state court, and it is

obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id.*  at 1302, 1306.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id*. at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial

court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

## Ineffective Assistance of Counsel

Because most of Petitioner's claims allege ineffective assistance, a review of the applicable law is necessary. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc).  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."  *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786.  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law."  *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id*. at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### Claim 1: Denial of motion for judgment of acquittal on aggravated stalking

At the close of the State's case in chief, Petitioner's counsel moved for a judgment of acquittal on all four charges. With respect to the aggravated stalking charge, counsel conceded that Petitioner had violated the terms of a domestic injunction by contacting the victim, but asserted that the evidence did not show that the victim was

under emotional distress at the time, the contact was not harassing, and the contact was initiated by the victim.  The court denied the motion. App. Exh. E. at 373-75.  Petitioner contends that the state court violated his right to a fair and impartial trial in violation of the Fourth, Fifth, and Fourteenth Amendments.  Doc. 1 at 4(a)-(b).

Respondent contends that this claim is unexhausted and procedurally defaulted because Petitioner did not present the issue as a federal claim in his direct appeal.  Doc. 12.  A review of Petitioner's brief on direct appeal reflects that it is devoid of any suggestion that Petitioner intended to raise federal constitutional claims as to the denial of his motion for JOA.   *See* App. Exh. F.   Petitioner has not asserted any cause or prejudice for the default, nor does the record suggest that a fundamental miscarriage of justice would result if the claim is not considered.

Even if Petitioner had properly exhausted this claim as a federal claim in state court, he has not shown that he is entitled to federal habeas relief.[2]  When reviewing a claim of the sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  On the aggravated stalking charge, the trial court instructed the jury as follows:

> To prove the crime of aggravated stalking, the state must prove the following two elements beyond a reasonable doubt:
>
> Number one, the defendant willfully, maliciously, and repeatedly harassed Jacqueline Veigh.

---

[2]Because it is clear that Petitioner is not entitled to relief on the merits, the Court may deny relief notwithstanding any failure to exhaust.  *See* 28 U.S.C § 2254(b)(2).

> Number two, the defendant did so in violation of an injunction for protection against domestic violence, or any other court imposed prohibition of conduct toward the victim or the victim's property.
>
> Harass, that word means to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose.

App. Exh. E. at 421-22.  This instruction tracks Florida's aggravated-stalking statute, Fla. Stat. § 784.048(4).

Jacqueline Veigh testified that she was in an eight-year relationship with Petitioner, during which he verbally and physically abused her.  She left Petitioner shortly after becoming pregnant with their third child.  In August 2004, she obtained a permanent domestic violence injunction against Petitioner.  Petitioner continued to call the home where Veigh was staying several times a day.  She testified that he approached her in violation of the order when she was leaving the children at a pick-up location for visitation, and he also sent her notes with the children when they returned to her.

Veigh testified that she attempted to reconcile with Petitioner after the birth of their youngest child, and sought unsuccessfully to have the injunction vacated.  She continued to see Petitioner, but they usually argued.  Petitioner visited Veigh's workplace and moved her car without telling her, and she contacted the police.  On another occasion, Petitioner asked Veigh to bring the children to his home so they could spend time together.  Petitioner became angry with Veigh and held a gun to her head, an act that was witnessed by their four-year-old son.  Veigh tried to leave with the baby, but after she entered her car Petitioner took her phone and keys and told her she could not leave.  Veigh returned to Petitioner's house because she was afraid for the children.

Veigh testified that although she did not report the gun incident to police, she stopped calling Petitioner on the phone.  Petitioner called her and left messages on her phone, and she testified that the messages "scared" her.

In July 2005, Veigh and Petitioner attended a court hearing regarding child support.  Veigh testified that Petitioner attempted to speak to her, accusing her of going out with another man.  When Veigh went to her car following the hearing she found that Petitioner had carved obscenities into the car, including "bitch," "slut," and "white trash."  As Veigh was inspecting the damage, Petitioner drove up and told Veigh he would repair the car.  He asked Veigh to get in his car so they could talk, and she did so.  Petitioner became angry about whether Veigh was seeing another man.  He drove Veigh towards the Gainesville racetrack, and began yelling and hitting Veigh, and roughly groping her.  Veigh testified that he threatened to shoot, kill, and rape her in a field, causing Veigh to become frightened.  She told Petitioner to let her out and to stop the car, and she grabbed the door handle, but Petitioner said if she opened the door he would push her out of the moving car.

Petitioner then became apologetic and drove Veigh back to her car.  He got in the car with her, and began going through her purse while Veigh around.  They returned to the courthouse where Petitioner retrieved his own car, and he then began following Veigh until she pulled over.  He re-entered the car and broke a cell phone holder and several compact discs.  Petitioner got back in his car and then drove alongside Veigh in an erratic manner.  When she again stopped, Petitioner parked and entered Veigh's car and began destroying various documents.  He cracked the windshield by striking it with his hand.  Veigh screamed at him to get out, and then drove home.  As she was

inspecting the damage to her car, Petitioner appeared and another altercation ensued, during which Petitioner broke the passenger-side window of Veigh's car.

Petitioner subsequently was arrested. While he was in jail pending trial, he wrote letters to Veigh and made telephone calls to her.  Believing Petitioner's representation that he had changed, Veigh answered his letters and brought the children to visit Petitioner.  Petitioner sought to pressure Veigh to change her story.  App. Exh. E at 141-341.

The State introduced 53 letters and 68 phone calls from Petitioner to Veigh.  The letters and calls contained extensive profanity and abusive language aimed at Veigh. Petitioner threatened Veigh's life and her family if Veigh did not act to withdraw the charges against Petitioner, making statements such as: "If you want me to start a f-----g graveyard the minute they let me the f--k out of here, I will;" "When they let me out of here I'll show you how f-----g bad problems can be;" "I will never, ever, as long as I breathe air in my f-----g body, let you be happy on God's green earth;" "If they give me life I'm going to pump iron day in, day out, and when I motherf-----g come out I'm gonna settle the motherf-----g score with you and your motherf-----g family;" and "And when they motherf-----g let me go from ths facility, I'm gonna show you even worse. I'm going to show you for the next twenty motherf-----g years, because if I ever, ever get the goddamn opportunity, ever, you understand, I'll show you."  App. Exh. E at 276-80.

Petitioner's claim that the trial court should have granted his motion for judgment of acquittal depends upon his assertion that the State did not establish that Veigh was "in reasonable fear for her life, as required by the statute," because Veigh admitted having ongoing and consensual contact with Petitioner.  Doc. 1 at 4(a)(-(b).  But the

statute under which Petitioner was convicted does not require that the victim be in fear

for her life or bodily injury.  Petitioner was convicted of aggravated stalking by harassing

Veigh after imposition of a domestic violence injunction.  *See* Fla. Stat. § 784.048(4).

On this record, it is apparent that a rational trier of fact could have found the essential

elements of aggravated stalking beyond a reasonable doubt, based on the

overwhelming evidence that Petitioner repeatedly harassed Veigh, causing substantial

emotional distress.  *See id*.  Petitioner has failed to show that he is entitled to habeas

corpus relief on this evidence-sufficiency claim.

### Claim Two: Failure to instruct jury on attempted false imprisonment

Petitioner contends that the trial court erred by failing to instruct the jury that it

could find Petitioner guilty of attempted false imprisonment as a lesser-included offense

of false imprisonment.  He contends that the evidence showed that Veigh voluntarily

entered his car during the July 2005 incident and "was essentially free to leave at any

time," and that the evidence therefore would have supported a conviction of the lesser-

included offense of attempt.  Doc. 1 at 4(c).

Respondent contends that this claim is unexhausted and procedurally defaulted

because Petitioner did not present the issue as a federal claim in his direct appeal.  Doc.

12.   A review of Petitioner's brief on direct appeal reflects that Petitioner did not assert

this claim as an issue of Federal constitutional law.   *See* App. Exh. F.   Petitioner has

not asserted any cause or prejudice for the default, nor does the record suggest that a

fundamental miscarriage of justice would result if the claim is not considered.

Even if this claim were properly exhausted, on this record Petitioner has not

shown that he is entitled to relief.   "State court jury instructions ordinarily comprise

issues of state law and are not subject to federal habeas corpus review absent

fundamental unfairness."  *Jones v. Kemp,*  794 F.2d 1536, 1540 (11th Cir. 1986) (citing

*Henderson v. Kibbe*, 431 U.S. 145, 154(1977); *Pleas v. Wainwright*, 441 F.2d 56, 57

(5th Cir.1971) (per curiam)).  "An error in instructing the jury cannot constitute a basis for

habeas relief unless the error so infected the entire trial that the resulting conviction

violates due process." *Jacobs v. Singletary*, 952 F.2d 1282, 1290 (11 Cir.1992)

(quotation omitted).

> The trial court instructed the jury that:

>> Count two is false imprisonment, and to prove the crime of false imprisonment the State must prove the following two elements beyond a reasonable doubt:

>> Number one, the defendant forcibly or by threat confined or restrained Jacqueline Veigh against her will.

>> And, number two, the defendant had no lawful authority.

>> [Y]ou should consider the possibility that although the evidence may not convince you that the defendant committed the main crime of which he is accused, there may be evidence that he committed other acts that would constitute a lesser included crime . . . . [t]he lesser included crime indicated in the definition of false imprisonment is battery.

The court went on to instruct the jury on the elements of battery.  App. Exh. E. at 422-23.

Petitioner has shown no federal constitutional error in the state court's

determination, under state law, that the jury should be instructed on battery as the

lesser-include offense of false imprisonment.  Moreover, the evidence was more than

sufficient for the jury to find that Petitioner was guilty of a completed false imprisonment

offense, and not an attempted offense, by restraining Veigh in his car against her will.

On this record, Petitioner fails to demonstrate that the jury instructions given in this case

rendered his trial fundamentally unfair because the trial court did not instruct the jury on "attempt."   He therefore is not entitled to habeas relief.

### Claim Three: Failure to admit recordings of victim's calls to Petitioner

Petitioner contends that the trial court erred by refusing to admit recordings of voicemail messages that the victim left for Petitioner.  Petitioner argues that the admission of such evidence was required by Florida's "rule of completeness," codified at Fla. Stat. § 90.180(1), which provides that when part of a writing or statement is introduced an adverse party may require introduction of other parts that in fairness ought to be considered.

Again, Respondent contends that this claim is unexhausted and procedurally defaulted because Petitioner did not present the issue as a federal claim in his direct appeal.  Doc. 12.   A review of Petitioner's brief on direct appeal reflects that Petitioner did not assert this claim as an issue of Federal constitutional law.   *See* App. Exh. F. Petitioner has not asserted any cause or prejudice for the default, nor does the record suggest that a fundamental miscarriage of justice would result if the claim is not considered.

Even if Petitioner had properly exhausted this claim, he would not be entitled to relief.  A state trial court's evidentiary rulings do not provide a basis for federal habeas relief absent a showing that the ruling affected the fundamental fairness of the trial.  *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998).  Even if erroneous, a Petitioner must show that the ruling "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Id*.  (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

The trial court refused to allow defense counsel to play a tape recording for the jury containing voicemail messages left for Petitioner by Veigh.  The court listened to the tapes in a proffer by defense counsel.  The court determined that the recordings did not fall within the rule of completeness because they were not part of the phone calls made by Petitioner that had been played for the jury, which were complete in their own right.  The court also noted that the calls did not fall within any hearsay exception, because Veigh was available to testify regarding her contacts with Petitioner and there was no dispute that she had consensual contacts with Petitioner.  App. Exh. E. at 321-30.

Given that Veigh was available to testify regarding her consensual contacts with Petitioner, and did so testify, the record does not support a conclusion that Petitioner's trial was rendered unfair by the exclusion of Veigh's voicemail messages to Petitioner.  Based on the undersigned's review of the record, there is no possibility that the exclusion of Veigh's voicemail messages had a substantial and injurious effect or influence in determining the jury's verdict.  Accordingly, Petitioner is not entitled to habeas relief on his claim.

**Claim Four: Ineffective assistance regarding audiotape excerpts**

Petitioner contends that his trial counsel rendered ineffective assistance by failing to object to the State playing only excerpts of the audiotapes of his conversations with Veigh for the jury, and that counsel also should have moved for a new trial on that ground.  Petitioner argues that the audiotapes in their entirety would have cast doubt on the State's assertion that Veigh suffered emotional distress as a result of Petitioner's conduct.

In rejecting this claim on postconviction review, the state court noted that

Petitioner's voicemail messages to Veigh were played in their entirety, but the jail
conversations were redacted.  Although the jail calls were redacted, the portions that
were played included Veigh's end of the conversation.  *See* App. Exh. E. at 270-82.  The
court noted that it was not the unredacted jail calls that Petitioner sought to have
introduced at trial; rather, Petitioner's counsel sought to introduce the four voicemail
messages left by Veigh on Petitioner's phone.  App. Exh. N at 67.  The state court
denied counsel's effort to have Veigh's voicemail messages admitted because, as noted
above, there was no legal basis for admitting them, Veigh admitted making the calls,
there was nothing significant in the substance of the messages themselves, and the jury
had ample evidence to determine Veigh's level of emotional distress based upon the jail
calls that were played at trial as well as her live testimony.  The court concluded that
Petitioner had failed to show either error by counsel or prejudice in this regard.  *Id*.

      The record is clear that counsel endeavored to have Veigh's voicemail messages
admitted at trial.  Given the trial court's reasons for excluding the messages, it is
apparent that any effort to seek a new trial on this ground would have been
unsuccessful.  Counsel cannot be deemed to have performed deficiently by failing to
make an unmeritorious motion.

      To the extent that Petitioner asserts in this Court that counsel performed
deficiently by failing to seek admission of the unredacted jail calls – a different claim
than the claim construed by the state postconviction court –  Petitioner provides no
explanation as to the contents of the unredacted jail calls or how such contents might
have altered the jury's verdict.  Petitioner has made no showing whatsoever that but for
counsel's failure to seek admission of the contents of the unredacted jail calls, there is a

reasonable probability that the outcome of the proceeding would have been different.

On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, *Strickland*.

**Claim Five: Ineffective Assistance regarding racially inflammatory remarks**

Petitioner contends that his trial counsel rendered ineffective assistance by failing to notice before trial that Petitioner used the word "nigger" in a voicemail message left for Veigh, and for failing to timely move for exclusion of the offense remarks. Petitioner contends that he was prejudiced by counsel's performance because one of the jurors was an African American who was predisposed to find the word offensive. Doc. 1 at 4(i)-(l).

In rejecting this claim on postconviction review, the state court reasoned as follows:

> In his voice-mail messages to the victim (*not* the jail phone calls as Defendant alleges), Defendant used the word "nigger" three times.[3] These calls were heard by the jury. After the first instance of the word on the audio tape, defense counsel moved for mistrial, which was ultimately denied by the court. During his closing argument, defense counsel addressed, indirectly, Defendant's use of the word. No mention of Defendant's use of the word was made by the State.
>
> The record reflects that defense counsel did not object or move for a curative instruction so as not to draw unnecessary attention to Defendant's use of the word. Considering the fact that *the entirety* of Defendant's calls [were] offensive, this seems reasonable. Besides using the word at issue, Defendant repeatedly referred to his victim as: "f-----g maggot," "f-----g scum," "f-----g whore," "f-----g sleaze ball," "f-----g bitch," "f-

---

[3]Petitioner used the word generally once in one message, and then in another message referred to Veigh as a "ghetto nigger" and a "white trash piece of f-----g dirt nigger."   App. Exh. E at 226, 243.

----g damaged f-----g goods," "stupid motherf----r," "f-----g lowlife piece of s--t," "dirt bag," "goddamn leach," "f-----g idiot," "f-----g whacked,""inbred," and "f-----g retard."  Furthermore, Defendant *carved* some of these words into the victim's truck. Defendant also threatened the victim's life and the life of her family . . . .Thus, even if counsel did err by failing to catch the word on the audio tape prior to the trial, he certainly did not err by failing to draw attention to it at trial given the plethora of inflammatory language being presented to the jury. Defendant's lack of prejudice follows from this as well. It is inconceivable that, given all the evidence that was presented to them, the jury convicted Defendant solely on his use of this word three times. This claim is without merit.

App. Exh. N at 68-69.

Counsel moved for a mistrial after the messages were admitted, and explained that he did not object during the playing of the messages because he did not want to draw any more attention than necessary to the offense language.  App. Exh. E at 256-57.   In his closing remarks, counsel did indirectly address the offensive language by arguing to the jury that whether Petitioner was profane or racist was irrelevant to the elements of the crimes that the State had to prove.  On this record, the Court cannot say that this strategy by counsel was unreasonable.  Moreover, in the context of the other extensive profane and abusive comments by Petitioner, there is no reasonable probability that but for counsel's failure to object to the three uses of an offensive racial term the outcome of the trial would have been different.

On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, *Strickland*.

### Claim Six: Ineffective assistance regarding severance of charge

Petitioner contends that his trial counsel rendered ineffective assistance by failing to discuss severing the tampering-with-a-witness with Petitioner prior to trial.  The record

reflects that before trial commenced, counsel asked Petitioner on the record whether he wanted to sever the tampering charge and Petitioner responded that he did not.  App. Exh. E at 21.

In rejecting this claim on postconviction review, the state court concluded that Petitioner had demonstrated no prejudice stemming from counsel's performance, because "[t]he evidence supporting the tampering charge was *the same evidence* supporting the aggravated stalking charge.  Whether the tampering charge had been severed or not the jury *would still have heard* the jail phone calls in which Defendant threatens to harm the victim if she proceeds to trial.  Defendant's guilt as to each of the charged offenses is overwhelming. Even if the tampering charge had been severed, there is not a reasonable probability that this would have affected the outcome of this trial.  This claim is without merit."  App. Exh. N. at 69-70.

The trial record reflects that counsel placed several matters on the record that he had previously discussed with Petitioner, including asking Petitioner to confirm "[y]ou do not wish me to ask the Court to sever the tampering from the trial, is that correct?"  To which Petitioner responded "correct."  App. Exh. E at 21.  On this record, Petitioner has not clearly shown that counsel failed to discuss this matter with him before trial, or that his decision to not have the charge severed was the product of any deficient performance by counsel.

Further, as the state court observed, Petitioner's recorded threats to Veigh were offered as evidence in support of the aggravated stalking charge as well as the tampering charge.  Although Petitioner contends that "the charge of tampering with a witness inherently carries a stigma of guilt," there was no evidence admitted in

connection with the tampering charge that would not have been admitted on the aggravated stalking charge.  Petitioner has not shown that there is a reasonable probability that separate trials upon the charges against him would have provided him with a better chance of acquittal.  Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, *Strickland*.

### Claim Seven: Ineffective assistance regarding criminal mischief charge

Petitioner contends that his trial counsel rendered ineffective assistance by failing to object to the evidence offered to show that his damage to Veigh's vehicle met the $1000 threshhold necessary to support a charge of criminal mischief under Florida law. Doc. 1 at 4(o)-(q).  Veigh produced a repair bill showing that it cost $575 to repair the windshield.  She later testified that Petitioner stated that the repair cost was $4400. Petitioner argues that counsel should have objected and required the State to substantiate the amount.

In rejecting this claim on postconviction review, the state court noted that defense counsel did in fact move for a judgment of acquittal on the basis that the State had not proven that damages were over $1000.  App. Exh. N at 70-71.   The evidence on the amount of damage included the victim's testimony that Petitioner told her the insurance company paid $4400 to repair the damages, and her testimony that Petitioner also referenced that amount in a letter to Veigh.  App. Exh. E. at 214-15.  Photographs of the damage to the vehicle were presented at trial, and the officer who responded to the criminal mischief call described the extensive damage that he observed.  App. Exh. E. at 349-50.  The state court concluded that any objection to Veigh's testimony on the

amount of damage would have been overruled, and that under state law Petitioner's admission of the amount of repair, coupled with the self-evident cost of repair to the vehicle, were sufficient evidence for the jury to find that the statutory threshhold was met.  App. Exh. N at 70-71 (citing *Clark v. State*, 746 So. 2d 1237, 1241 (Fla. 1st DCA 1999); *see also A.D. v. State*, 866 So. 2d 752, 753–54 (Fla. 2d DCA 2004)).

On this record, Petitioner has failed to show either that counsel performed deficiently regarding the State's evidence on damages, or that he was prejudiced by counsel's performance.   The state court's rejection of this ineffective-assistance claim was neither contrary to, nor an unreasonable application of, *Strickland*.

### Claim Eight: Trial court error in excluding testimony of Faye Guinn

Petitioner contends that the trial court committed fundamental error by granting the State's motion in limine regarding proposed testimony by Petitioner's mother, Faye Guinn.  Defense counsel sought to call Guinn to testify regarding a protective injunction that Guinn obtained against Veigh.  Doc. 1 at 4(r).

Respondent contends that this claim is unexhausted because Petitioner did not raise it on direct appeal, and the state court on postconviction review found that it was procedurally barred.  Doc. 12; *see* App. Exh. N at 72.   The Court agrees.  Petitioner has made no showing of cause of prejudice to excuse the procedural default, and this claim is foreclosed from Federal review.

Even if the claim were not foreclosed, the Court would conclude that it has no merit.  The trial court granted the motion in limine on the basis that Guinn's testimony was not relevant to the charges against Petitioner, but permitted counsel to reassert the

issue later in the trial.  *See* App. Exh. E at 8-10, 148-49, 262, 266-69, 320-21, 375-76.

The trial court's rulings finding that Guinn's testimony was not relevant to any trial issue

do not present an issue for federal habeas review, absent a showing that such rulings

rendered the trial fundamentally unfair.  In view of the overwhelming evidence of

Petitioner's guilt, and the collateral nature of Guinn's proposed testimony, Petitioner has

failed to show that the evidentiary rulings rendered his trial fundamentally unfair.

### Claim Nine: Ineffective assistance relating to Guinn's testimony

Petitioner contends that his trial counsel rendered ineffective assistance by failing

to file a motion for new trial based on the trial court's rulings excluding Ms. Guinn's

testimony.  Doc. 1 at 4(s)-(u).  The state court rejected this claim on postconviction

review, noting that counsel had preserved the issue for appeal, and that even if counsel

had filed a motion for new trial asserting the issue again there was no reasonable

probability that the court would have granted a new trial on that ground.  App. Exh. N at

71.  Apart from his conclusional assertions to the contrary, Petitioner has failed to show

that the state court's rejection of this ineffective-assistance claim was contrary to, or an

unreasonable application of, *Strickland*.

### Claim Ten: Ineffective assistance of appellate counsel

Petitioner contends that his appellate counsel rendered ineffective assistance by

failing to raise as an appellate issue that the trial court erred in not granting his motion

for judgment of acquittal on the criminal mischief charge, due to the allegedly insufficient

evidence regarding the amount of damage to the vehicle.  Doc. 1 at 5(a)-(b).

In assessing appellate counsel's performance, "the Sixth Amendment does not

require appellate advocates to raise every non-frivolous issue." *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  Rather, "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id*. at 1131.  When appellate counsel reviews the entire record, thinks about various claims, and then chooses to pursue only certain issues on appeal, counsel has not rendered ineffective assistance.  *Id*.  Although a non-appealed issue might have been successful if it had been raised, appellate advocacy must be "judged in its entirety."  *Id*.  To determine prejudice in the context of appellate counsel's effectiveness, the Court must review the merits of the neglected claim or claims.  *Heath*, 941 F.2d at 1132.  Failure to raise a claim will not be found prejudicial unless the claim would have a reasonable probability of success on appeal.  *Id*.

As explained above, the trial court determined that there was competent evidence on the issue of damages, and trial counsel preserved his objections for possible appellate review.  Given that the evidence presented on damages was competent under state law, and more than sufficient for the jury to find that the $1000 threshhold was met, appellate counsel did not perform deficiently by pursuing other, stronger, arguments on appeal.  Further, on this record there is no reasonable probability that the outcome of the appeal would have been different but for appellate counsel's failure to raise this issue.  Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, Federal law.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2. That a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 14th day of August 2012.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.